UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRECIOUS REED**, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**PRN PHYSICIAN RECOMMENDED NUTRICEUTICALS, LLC**, a limited liability company,<br><br>Defendant. | : | Case No:<br><br>Hon. |

**COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Precious Reed, individually and on behalf of all others similarly situated ("Plaintiff"), by and through her attorneys, brings this Collective and Class Action Complaint against PRN Physician Recommended Nutriceuticals, LLC ("Defendant" or "PRN"), and alleges as follows:

**INTRODUCTION**

1. This is a collective and class action under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and common law.

2. Defendant develops, markets, and sells eye-health products and nutraceuticals under the PRN Vision Group and EyePromise brands from its headquarters in Blue Bell, Pennsylvania.

3. Defendant employed Customer Advisors, Customer Service Representatives, and employees with similar titles in remote call-center positions (collectively, "Representatives") to answer calls, process payments, resolve account issues, send replacements, and modify orders.

4. Defendant employed Plaintiff as an hourly, non-exempt Customer Advisor working remotely from Tampa, Florida.

5. Representatives relied on company-issued computers and essential applications and were subject to call, quality-assurance, productivity, and schedule-adherence metrics.

6. The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant' Representatives, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[1]

7. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at 2.

8. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

---

[1] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), (July 2008), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers.

9. Defendant failed to record and compensate work Plaintiff and other Representatives performed before shifts, after shifts, and during unpaid meal periods.

10. More specifically, Defendant failed to compensate Representatives for the substantial time they spent turning on and booting up their computer and computer systems and loading numerous applications and programs prior to clocking in to Defendant' timekeeping system.

11. In weeks when total hours actually worked exceeded forty, the nonpayment violated the FLSA; in other weeks, Defendant failed to pay the Representatives' agreed hourly wages, resulting in common-law straight-time damages.

12. Plaintiff seeks unpaid overtime, liquidated damages, unpaid straight-time wages under common law, attorneys' fees and costs, and all other available relief.

13. Plaintiff will promptly request Court-authorized notice to similarly situated Representatives employed during the three years preceding this action through final judgment.

**PARTIES**

14. Plaintiff Precious Reed is a Tampa, Florida resident. Defendant employed her from approximately January 15, 2024 through October 2024 as a remote, hourly, non-exempt Customer Advisor paid $19.24 per hour.

15. Plaintiff accepted Defendant's written offer on December 21, 2023. The offer classified her as non-exempt, required at least forty hours of work per week, and promised overtime compensation in accordance with federal and state law.

16. Plaintiff's written Consent to Join under 29 U.S.C. § 216(b) is being filed contemporaneously as Exhibit A.

17. Additional putative Collective members were or are employed by Defendant as non-exempt Representatives, and their consent forms will be filed as they elect to join.

18. Defendant PRN Physician Recommended Nutriceuticals, LLC is a Delaware limited liability company with its principal place of business at 960 Harvest Drive, Suite B205, Blue Bell, Pennsylvania 19422. It does business as PRN Vision Group and EyePromise.

**JURISDICTION AND VENUE**

19. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

20. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

21. Defendant's annual gross volume exceeds $500,000 and it employs at least two persons, thus, the FLSA applies in this case on an enterprise basis. Representatives also engaged in interstate commerce through calls, internet communications, payments, and customer orders and, therefore, they are also covered by the FLSA on an individual basis.

22. This Court has supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367 because they originate from the same facts that form the basis of her federal claims.

23. This Court has personal jurisdiction because Defendant is headquartered in this District and directs employment, payroll, and timekeeping operations from this District.

24. Venue is proper under 28 U.S.C. § 1391(b) because Defendant resides here and substantial employment, payroll, policy, and timekeeping decisions occurred in or were directed from this District.

25. Venue also accords with the employment-related agreement Defendant required Plaintiff to sign, which designated the state and federal courts in Montgomery County, Pennsylvania.

**GENERAL ALLEGATIONS**

26. Defendant paid its Representatives at varying hourly rates.

27. Defendant's Representatives typically worked five days each week and up to, and on occasion more than, forty (40) hours per week.

28. Defendant provided Representatives offers identifying their positions, pay rates, schedules, and employment conditions; and maintained offer letters, pay records, and compensation records demonstrating the promised hourly wage for each Representative.

29. Plaintiff and other Representatives accepted with the understanding that they would receive their established hourly rates for all work and overtime premiums for hours over forty.

30. Plaintiff answered inbound calls, made outbound calls, assisted with payments, reviewed package requests, resolved account and order issues, arranged replacements, and modified orders.

31. Plaintiff generally worked five days per week from 11:30 a.m. to 8:00 p.m. after training, with a rotating Saturday schedule and a minimum forty-hour workweek.

32. Defendant provided training to Representatives on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendant's policies. The training that all of Defendant's Representatives received was substantially, if not entirely, the same.

33. Plaintiff worked forty hours and, in some weeks, more than forty. Defendant possesses the records identifying those workweeks.

34. Defendant supplied a laptop and two monitors and required Plaintiff and other Representatives to use Microsoft Teams, Outlook, internal file and account systems, Cisco telephone software, Salesforce, Okta Verify, and a timekeeping system.

35. Defendant controlled schedules, assignments, customer queues, systems, protocols, performance standards, and employment conditions.

36. In order to perform their job duties, Plaintiff and Defendant's Representatives required a computer and a variety of essential and indispensable computer programs, applications, and servers.

37. Defendant recorded calls and monitored Representatives through call metrics, schedule-adherence metrics, quality reviews, coaching, and electronic systems.

38. Defendant expected Representatives to be prepared to accept calls at the beginning of scheduled shifts. This required Defendant's Representatives to be logged into and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they could be prepared to take calls the moment their shift began. During the boot-up and login process, Defendant's Representatives often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

39. All of Defendant's Representatives used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Representatives' work and they could not perform their jobs without them.

40. Defendant required advance approval for overtime and discouraged Representatives from recording work outside scheduled shifts.

41. Managers instructed Plaintiff to clock in at her scheduled start and treated unapproved time beyond her schedule as improper or "stealing time," even when work demands required it.

42. These policies forced Representatives to choose between meeting rigid call and adherence demands and accurately recording all time worked.

43. Defendant knew or should have known of off-the-clock work because it possessed computer-access, authentication, application, telephone, customer-account, email, Teams, schedule, adherence, and time-punch records.

44. Defendant could compare those records to identify uncompensated work but failed to ensure all compensable time was recorded and paid.

45. Defendant's conduct was willful: it imposed the requirements causing the work, controlled the records, and enforced policies discouraging accurate time reporting.

46. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

47. Despite knowing Plaintiff and all other Representatives performed this pre-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

48. Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other Representatives experienced technical issues.

49. Because Defendant required its Representatives, including Plaintiff, to perform pre-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Representatives spent working for Defendant. Thus, the hours reflected on the Representatives' paystubs are also inaccurate representations of the hours they worked.

50. A rule against unapproved overtime does not excuse payment for work suffered or permitted. See 29 C.F.R. §§ 785.11–13.

***A. Pre-Shift Off-the-Clock Work.***

51. Pursuant to Defendant's policies, training, and direction, Plaintiff and other Representatives were required to begin work prior to the start of their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs:

a. Powering on company-issued computers and monitors;

b. Connecting to Defendant's systems and network;

c. Completing Okta Verify or other authentication;

d. Accessing Defendant's timekeeping system;

e. Launching Cisco telephone software;

f. Launching Salesforce and customer-account systems;

g. Opening Teams, Outlook, and internal files; and

h. Resolving startup, login, and connectivity issues.

52. These activities were integral and indispensable because Representatives could not take calls, access accounts, process payments, or modify orders until the systems were operational.

53. The off-the-clock pre-shift process took substantial time on a daily basis, approximately five (8) to ten (10) minutes per shift.

54. Defendant instructed Plaintiff to record an 11:30 a.m. start and discouraged her from clocking in even five minutes early without approval.

55. Waiting until the scheduled start to load systems would prevent Representatives from being call-ready and meeting adherence expectations.

56. The uncompensated pre-shift work was regular, ascertainable, directly benefited Defendant, and was not *de minimis*.

57. Because Plaintiff was scheduled for at least forty hours, this work commonly pushed total hours above forty or added to other overtime work.

***B. Post-Shift Off-the-Clock Work.***

58. Defendant required Representatives to maintain adherence and complete customer calls, including calls extending beyond a scheduled shift.

59. Plaintiff was sometimes still handling a call at or after 8:00 p.m., yet Defendant required or pressured her to record an 8:00 p.m. end and reprimanded her for recording time beyond schedule.

60. Post-shift calls could last as long as approximately thirty minutes.

61. After calls, Representatives had to log out of the phone and account systems and close email and communication platforms, taking Plaintiff about five additional minutes.

62. The calls and closing activities were integral, benefited Defendant, were not de minimis, and were visible in Defendant's electronic records.

63. Upon information and belief, common adherence and approval policies caused post-shift work by Plaintiff and other Representatives to go unpaid.

### *C. Unpaid Meal-Period Work.*

64. Defendant scheduled a thirty-minute unpaid meal period and required Plaintiff to clock out and back in.

65. When queues were busy, Plaintiff sometimes returned approximately four to five minutes early and worked before recording the end of the unpaid period.

66. Defendant altered or caused records to be altered to reflect scheduled hours or forty total hours rather than all time actually worked.

67. This work was compensable, benefited Defendant, and was ascertainable from phone, account, access, and timekeeping records.

### *D. The Off-the-Clock Work Results in Viable "Gap Time" Claims.*

68. "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc*., 450 F. Supp. 3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

69. Plaintiff, and all other current and/or former Representatives, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

70. During the weeks that Representatives did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight time wages, in breach of Defendant's contracts with its Representatives.

***E. Wage Consequences.***

71. When recorded and unrecorded work exceeded forty hours, Defendant failed to pay the required overtime premium for all hours over forty.

72. In other weeks, Defendant failed to pay established hourly rates for all compensable work, creating straight-time or "gap-time" damages recoverable through the common-law claims.

73. Defendant's centralized records can identify affected shifts and permit classwide damages calculations.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

74. Plaintiff brings this action under 29 U.S.C. § 216(b) on behalf of:

> *All current and former Customer Advisors, Customer Service Representatives, and employees with similar call-center duties employed by Defendant during the three years preceding this action through final judgment.*

This group is the "FLSA Collective." Plaintiff reserves the right to amend the definition after discovery.

75. Excluded are executives and other employees properly classified as exempt.

76. Defendant is liable for failing to pay one and one-half times the regular rate for all hours over forty.

77. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

78. Defendant was aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

79. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to

Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all regular hours that they worked off-the-clock in non-overtime workweeks;

b. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

c. Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

80. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because they performed similar duties, used similar systems, faced similar adherence expectations, were harmed by similar timekeeping and approval practices, were or are subject to the same or similar unlawful practices, policy, or plan, and their claims are based upon the same factual and legal theories.

81. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are 1) required to work without compensation; and 2) entitled to their regular hourly wage in non-overtime workweeks and overtime for hours worked over forty (40) in a week.

82. Upon information and belief, the Collective includes hundreds of employees identifiable from Defendant's records.

83. Collective members should receive Court-authorized notice and an opportunity to opt in. Unless the Court promptly issues such a notice, the FLSA Collective members, who have

been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

**RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

84. Plaintiff brings her common-law claims under Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of:

> *All current and former Customer Advisors, Customer Service Representatives, and employees with similar call-center duties employed by Defendant during the applicable limitations period.*

This group is the "Rule 23 Nationwide Class." Plaintiff reserves the right to amend the definition after discovery and choice-of-law determinations.

85. The Class includes hundreds of employees, making joinder impracticable. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

86. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

c. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

87. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class because she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise

from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

88. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

89. A class action is superior because individual damages are modest, employees may fear retaliation, and centralized proof can efficiently resolve liability and damages.

90. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

91. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

92. Certification under Rules 23(b)(2) and (b)(3) is appropriate.

## COUNT I
## FLSA COLLECTIVE ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, et seq. — FAILURE TO PAY OVERTIME

93. Plaintiff re-alleges and incorporates the preceding paragraphs.

94. Defendant was an enterprise engaged in commerce subject to the FLSA.

95. At all times relevant to this action, Plaintiff and the FLSA Collective were

"employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

96. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

97. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

98. The FLSA requires overtime at one and one-half times the regular rate for all hours over forty and accurate records of hours worked. 29 U.S.C. §§ 207(a)(1), 211(c).

99. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

100. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

101. In weeks when total hours exceeded forty, Defendant failed to pay the overtime premium for all hours over forty.

102. As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

103. The work was integral, regular, ascertainable, and not *de minimis*.

104. The violations were willful and not in good faith. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not

105. Plaintiff and Collective members are entitled to unpaid overtime, equal liquidated damages, attorneys' fees and costs, and all other appropriate relief.

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

106. Plaintiff re-alleges and incorporates the preceding paragraphs.

107. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

108. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for Representative work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

109. For example, Defendant offered to compensate Plaintiff at a minimum of $19.24 per hour if she agreed to perform services for Defendant as a Representative. Plaintiff accepted Defendant's offer and performed her duties as a Representative in reliance on the offer.

110. Defendant breached its contractual promises by failing to pay Representative s at their fixed, pre-agreed upon hourly rate for *all* of the hours worked, including non-overtime hours.

111. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the

contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift work described herein.

112. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

113. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

114. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

115. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

116. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

117. Plaintiff re-alleges and incorporates the preceding paragraphs.

118. This Count is pleaded in the alternative under Fed. R. Civ. P. 8(d)(2)–(3).

119. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

120. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

121. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

122. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

123. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

124. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

125. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

126. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the

Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

127. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a. An Order certifying this case as a collective action and authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above (Count I);

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

d. An Order appoint Plaintiff as representative and undersigned counsel as class counsel;

e. An Order declaring that Defendant violated the FLSA;

f. An Order declaring the violations willful;

g. An Order declaring that Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at the pre-established (contractual) rate for each hour they worked; OR in the alternative, an Order declaring Defendant was unjustly enriched by the off-the-clock work they required Plaintiff and the Rule 23 Nationwide Class to perform;

h. An Order awarding all unpaid overtime and straight-time wages available under the pleaded claims;

i. An Order awarding FLSA liquidated damages equal to unpaid overtime;

j. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute ;

k. An Order awarding pre- and post-judgment interest; and

l. An Order awarding all other just and proper relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff Precious Reed, individually and on behalf of all others similarly situated, demands a jury trial on all issues so triable.

Dated: September 10, 2026

Respectfully submitted,

*/s/ T. Matthew Leckman*
T. Matthew Leckman (PA ID No. 92241)
**LECKMAN LAW LLC**
418 Newbold Road
Jenkintown, PA 19046
Telephone: (215) 635-0584
Email: matt@leckmanlaw.com

*/s/ Jeff S. Gibson*
Jeff S. Gibson (IN Bar No. 22362-49)
**WAGNER REESE LLP**
11939 North Meridian Street
Carmel, Indiana 46032
Telephone: (317) 689-0008
Email: jgibson@wagnerreese.com
*Pro Hac Vice to be filed*

*/s/ Jacob R. Rusch*
Jacob R. Rusch (MN Bar No. 0391892)
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
Telephone: (248) 746-4025
Email: jrusch@sommerspc.com
*Pro Hac Vice to be filed*